CREW–LEVICK CO. v. BRITISH & FOREIGN MARINE INS. CO., Limited.

(Circuit Court, E. D. Pennsylvania. December 30, 1896.)

No. 336.

FIRE INSURANCE—GOODS IN TRANSIT—TERMINATION OF RISK.

   Defendant, in insuring oil for inland transportation, issued a marine policy with a rider attached. In the printed clause, providing that the risk should begin from the time of loading the goods on "said vessel," and continue until they were "safely landed," the blanks for place of loading and landing were not filled. The rider stated that the insurance was "on oil in tank cars, in transit." *Held*, that the risk terminated upon delivery of the oil by placing the cars upon consignee's private siding, at its refinery.

T. F. Jenkins, for plaintiff.
H. N. Paul, Jr., for defendant.

DALLAS, Circuit Judge. The policy sued upon covered "oil contained in tank cars." The question is whether the loss, which admittedly occurred, though of oil in tank cars, was one for which the defendant had contracted to indemnify the plaintiff. The right solution of this question depends upon what is the correct construction of the policy respecting its continuance. In the form used there is contained, in print, the language:

"Beginning the adventure upon the said goods and merchandise from and immediately following the loading thereof on board of the said vessel, at ——, as aforesaid, and so shall continue and endure until the said goods and merchandise shall be safely landed at ——, as aforesaid."

The blanks here indicated were not filled in; and the language quoted is followed by other matter which is accurately applicable only to marine insurance, with the exception of the words, "The said goods and merchandise hereby insured, are valued at" (printed) "as per form attached herein" (written), which, of course, were, by the written portion, made specifically applicable, and by the reference to the form attached were made definitive. The form referred to consists of a typewritten paster, as follows:

"New York, October 24th, 1895.

"In consideration of $12.00 additional premium, this policy is hereby made to cover under the following form, and not as heretofore, to wit:

"Crew-Levick Company,
"For account of whom it may concern.
"Loss, if any, payable to them.

"$2,500 on oil contained in tank cars in transit, principally from oil regions in Pennsylvania and New York to various places, and to Sea-Board Oil Works, South Chester, Pa., and from Sea-Board Oil Works to various places.

"It is the true intent and meaning of this policy to fully indemnify the assured for each and every loss by or in consequence of fire, derailment, or collision, not

exceeding, however, the sum hereby insured, anything contained in the printed conditions of this policy to the contrary notwithstanding.

"$2,500, 1 year from October 10, 1895, at 10% per annum.

"Premium, $250.

"Attached to and forming part of policy No. 638,003 of the British & Foreign Marine Insurance Co., L't'd."

The presently material portion of the affidavit of defense is as follows:

"It is not true, as stated in the plaintiff's statement, that the oil which is there alleged to have been destroyed was at the time of its destruction 'contained in tank cars in which it was being carried by rail from the places hereinafter mentioned to the plaintiff's warehouse, situate at Swanson and Jackson streets, Philadelphia,' but, on the contrary, the said oil had been shipped upon various railroads, from various places, as stated in the plaintiff's statement, and consigned to 'the Crew-Levick Company, Swanson and Jackson streets, Philadelphia.' At the corner of said Swanson and Jackson streets, Philadelphia, the Crew-Levick Company, at the time in question, owned an inclosed tract of ground, or yard, within which was situated its warehouse or refinery. A private siding owned by said company runs through and upon its land, and immediately alongside said warehouse, or refinery. At the time of its destruction, and some hours previous to the commencement of the fire by which it was destroyed, the oil which this suit concerns had completed its transit, and had been finally and irrevocably delivered by the railway companies, by which it had been carried into the exclusive and full possession and control of the plaintiff company, at and upon its property at Swanson and Jackson streets, Philadelphia, and within its inclosure. This delivery of the oil by the carriers to the plaintiff company had been made in the usual course of business, and in the usual way in which, according to the custom of the business, such deliveries of oil are made, namely, by placing the tank cars containing the oil upon the aforesaid private siding of the plaintiff, upon its own property, within the aforesaid inclosed yard, and within its exclusive possession and control, after which the carriers had relinquished all possession and control of the oil. The tank cars containing the oil which was destroyed stood, at the time of their destruction, on the aforesaid siding, immediately alongside of the plaintiff's warehouse or refinery, and were destroyed by reason of the burning of the said warehouse or refinery, which caught fire some time after the said cars had been placed there when the oil was delivered. The oil was delivered to the plaintiff company in the tank cars, because it is incapable of being delivered in any other way, and because that is the customary method of delivering it; the said carriers allowing the plaintiff company to have the use of its tank cars for a reasonable time after delivery. By reason of these facts the contract of insurance upon which this suit is founded had ceased to cover the oil which was destroyed."

Upon the facts thus alleged, and which, of course, must, upon this rule, be assumed to be truly alleged, the substance of the controversy may be thus stated: Was the oil still covered, because it had not yet been removed from the tank cars, and, therefore, as plaintiff contends, had not been "landed"? Or had it ceased to be covered, because, as defendant contends, it was not, at the time of loss, "in transit"?

That this policy related to inland transportation, and not to carriage by sea, both parties, of course, fully understood. The nature of the risk is, in several respects, very different in the one case and in the other; and this, too, must have been perfectly well known to both the insurer and the assured. Yet, instead of putting their contract in distinct form, the underwriter saw fit to give, and the assured to accept, an altered marine policy, with a rider attached. But the policy, such as it is, was prepared and issued by the defendant, and I fully agree that if, from the circumstances I have mentioned, or

from any other, its true intent and meaning were so difficult of ascertainment as to render its correct construction a matter of serious and substantial doubt, that interpretation of it, being reasonable, which would be most favorable to the assured, should be adopted. But this principle is not applicable where no necessity for its application exists. In some cases it is rightly invoked to rescue the party taking such a contract from being ensnared by the ambiguous language employed by the other. This is not such a case. The meaning of both parties is clear beyond question. I cannot believe that they did not understand this policy in the same way. By putting ourselves in their place at the time that they made it, and considering the circumstances of the case, it becomes apparent that but one distinct meaning can be ascribed to it. The object was to protect property on land, not at sea. The word "landed" had, therefore, no appropriateness. It is impossible to suppose that this was not as apparent to the one party as to the other, or that either of them did not comprehend that the language which really limited the continuance of the risk was that contained in the "form attached," viz.: "On oil contained in tank cars in transit." That the delivery of the oil, as alleged in the affidavit, terminated the transit, I have no doubt. Furthermore, I think that, if requisite, the defendant should be allowed to adduce evidence to show the matters set up in the supplemental affidavit of defense, and, therefore, that, to that end, the case must be allowed to go to a jury. The plaintiff's rule for judgment for want of a sufficient affidavit of defense is discharged.